1
2
3
4
5
6
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7  DAVID K. DEMERS,

8          Plaintiff,                          NO.  CV-09-334-RHW

9       v.

10 ERICA AUSTIN, ERICH LEAR,                   **ORDER GRANTING
   WARWICK M. BAYLY, and                       DEFENDANTS' MOTION FOR
11 FRANCES MCSWEENEY,                          SUMMARY JUDGMENT**

12         Defendants.

13

14      Before the Court is Defendants' Motion for Summary Judgment (ECF No.

15 61).  A hearing on the motion was held on May 12, 2011.  Plaintiff was represented

16 by Judith Endejan.  Defendants were represented by Kathryn Battuello.

17                          **BACKGROUND FACTS**

18      Plaintiff is a full-time tenured associate professor at Washington State

19 University.  He holds a position in the Murrow College.[1]  He started teaching at

20 WSU in 1996, and obtained tenure in 1999.  He teaches journalism and mass

21 communication classes.

22      Plaintiff asserts he was retaliated against by four WSU administrators for

23 speaking out on how to improve the quality of the Edward R. Murrow School of

24

25      [1]Prior to July, 2008, the Murrow College was the Murrow School of

26 Communications, which was structured as a school within WSU's College of

27 Liberal Arts.  Whether the Murrow School should be reorganized into a separate

28 college generated extensive debate within the university community.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1**

Communications.  He cites two specific instances of retaliation: (1) he received a drop in the ratings in his annual job evaluations, including unjust and untruthful evaluations and (2) he was subjected to an unwarranted "internal audit."

Plaintiff cites the following instances of protected speech:

1.  Repeatedly requested formal accreditation of the journalism program from the Accrediting Council on Education in Journalism and Mass Communication;

2.  Vocally supported Dr. Tan, a prior administrator who Defendant Dr. Austin replaced;

3.  Expressed concern about the journalism programs' de-emphasis on student professional training and its emphasis instead on theoretical research;

4.  Offered suggestions about how to re-structure Murrow to address his concerns, including removing the Communications Studies sequence;

5.  Wrote *7-Step Plan for Improving the Quality of the Edward R. Murrow School of Communication* and distributed it within WSU and to media and other external recipients;

6.  Wrote *The Ivory Tower of Babel* while on sabbatical, which criticized University bureaucracies and questioned the significance of social sciences as a force for public policy change.

(ECF No. 86).

In his Amended Complaint, Plaintiff asserts claims for First Amendment retaliation, defamation, negligent infliction of emotional distress and outrage.

## ANALYSIS

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2**

1  that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

2  56(c). There is no genuine issue for trial unless there is sufficient evidence

3  favoring the nonmoving party for a jury to return a verdict in that party's favor.

4  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The moving party has

5  the initial burden of showing the absence of a genuine issue of fact for trial.

6  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets it

7  initial burden, the non-moving party must go beyond the pleadings and "set forth

8  specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*,

9  477 U.S. at 248.

10      In addition to showing that there are no questions of material fact, the

11  moving party must also show that it is entitled to judgment as a matter of law.

12  *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir.

13  2000).  The moving party is entitled to judgment as a matter of law when the

14  non-moving party fails to make a sufficient showing on an essential element of a

15  claim on which the nonmoving party has the burden of proof.  *Celotex*, 477 U.S. at

16  323.

17      When considering a motion for summary judgment, a court may neither

18  weigh the evidence nor assess credibility; instead, "the evidence of the non-movant

19  is to be believed, and all justifiable inferences are to be drawn in his favor."

20  *Anderson*, 477 U.S. at 255.

21                    FIRST AMENDMENT CLAIM

22      The Ninth Circuit consistently employs a sequential five-step inquiry to

23  determine whether an employee's First Amendment rights were violated:

24          (1) whether the plaintiff spoke on a matter of public concern; (2)
           whether the plaintiff spoke as a private citizen or public employee; (3)
25          whether the plaintiff's protected speech was a substantial or
           motivating factor in the adverse employment action; (4) whether the
26          state had an adequate justification for treating the employee
           differently from other members of the general public; and (5) whether
27          the state would have taken the adverse employment action even absent
           the protected speech.

28  *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 748 (9th Cir.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3**

2010), (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)); *see also Huppert v. City of Pittsburg*, 574 F.3d 696, 702 (9th Cir. 2009); *Desrochers v. City of San Bernardino*, 572 F.3d 703, 708 (9th Cir. 2009); *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009).

Generally, courts are reluctant to interfere with a university's right to self-governance in academic affairs. *Grutter v. Bollinger*, 539 U.S. 306, 328-29 (2003); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985); *Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6 (1978). Concurring in *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957), Justices Frankfurter and Harlan referred to the four freedoms of a university: "to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." "The academy's freedom to make such decisions without excessive judicial oversight is an 'essential' part of academic liberty and a 'special concern of the First Amendment.'" *Rodriguez v. Maricopa County Comm. College Distr.*, 605 F.3d 703, 709 (9th Cir. 2010)(quotation omitted).

## PUBLIC CONCERN / PRIVATE CITIZEN

Questions of material facts exist regarding the third, fourth, and fifth prongs of the First Amendment employee speech analysis. The inquiry, then, must focus on whether Plaintiff was speaking as a private citizen on a matter of public concern.

Plaintiff bears the burden of showing that the speech in question addressed issues of public concern. *Desrochers*, 572 F.3d at 708. The public concern inquiry is a question of law. *Id.* A court must consider "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Of these, content is the most important factor. *Desrochers*, 572 F.3d at 710. "Speech involves a matter of public concern when it fairly can be said to relate to any matter of political, social, or other concern to the community." *Huppert*, 574 F.3d at 703 (internal quotation marks and alterations omitted). "Public concern" does not have a precise definition, but "the essential question is

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4**

whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Desrochers*, 572 F.3d at 709.  Subjects of public concern include "unlawful conduct by a government employee" and the "misuse of public funds, wastefulness, and inefficiency in managing and operating government entities." *Huppert*, 574 F.3d at 703-04 (citing cases).  "[S]peech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern."  *Eng*, 552 F.3d at 1070 (citation omitted).

Whether Plaintiff spoke as a public employee or a private citizen is a mixed question of law and fact.  *Posey v. Lake Pend Oreille Sch. Dist. No. 84,* 546 F.3d 1121, 1129 (9th Cir. 2008).  Plaintiff bears the burden of showing his speech was spoken in the capacity of a private citizen and not a public employee.  The scope of Plaintiff's job duties is a question of fact.  *Id.* at 1130.  "When there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment . . . until after the fact-finding process."  *Id.* at 1131.  "Statements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform."  *Eng*, 552 F.3d at 1071 (internal quotation marks omitted) (citing cases).  Statements do not lose First Amendment protection simply because they concern "the subject matter of [the plaintiff's] employment."  *Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006).  However, "speech which 'owes its existence to an employee's professional responsibilities' is not protected by the First Amendment."  *Huppert*, 574 F.3d at 704 (*quoting Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  Specifically, the *Garcetti* Court held that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities."  547 US. at 424.

**PLAINTIFF'S SPEECH**

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5**

1. **Faculty appointments and removals**

Plaintiff asserts he was retaliated against because he voiced opposition to: the removal of Dr. Tan; the secret faculty ballot that elected Dr. Austin to the position of Director; and the appointment of Dr. Michael Salvador as an Assistant Director without giving other faculty a chance to apply for the position. This speech was clearly made in the course of doing his job as a WSU professor, and therefore it is not protected under the First Amendment. Moreover, this speech is not speech on a matter of public concern; rather, it is speech that focuses on personnel-related grievances and a workplace struggle for power. Likewise, Plaintiff's speech regarding accreditation, whether the college should emphasize professional training or theoretical research, and suggestions regarding the restructuring of the college are all speech that related to internal matters at WSU and are not matters of public concern and was made in the course of Plaintiff's employment.

2. **Publications**

Plaintiff asserts he was retaliated against because he distributed his *7-Step Plan for Improving the Quality of the Edward R. Murrow School of Communication* within the WSU community and to media and other external recipients. He also implies that he was retaliated against because he wrote *The Ivory Tower of Babel*, which he worked on during his sabbatical in 2008/2009, that criticizes University bureaucracies and the internal audit and questions the significance of the social sciences as a force for public policy change. He argues that the direction of journalism education in America is a matter of significant public concern.

The Court finds that the *7-Step Plan* does not address matters of public concern. The *7-Step Plan* was limited in scope and focus to the journalism education at Washington State University. It was not dealing with possible corruption or a misuse of public funds. The *Plan* did not provide "relevance to the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6**

public's evaluation of the performance of governmental agencies."

Even if the speech addressed matters of public concern, however, it is clear that Plaintiff was not speaking as a citizen when he initially presented the *Plan* to his fellow faculty members and to the university administration.  He was writing and submitting his document as a member of the faculty.  The scope of an employee's official duties  include "those activities that an employee undertakes in a professional capacity to further the employer's objections."  *See Hong v. Grant*, 516 F.Supp.2d 1158, 1166 (C.D. Cal. 2007). The *Plan* was prepared and presented in this capacity.  At WSU, faculty members' official duties are not limited to classroom instruction and research.  Faculty members are expected to participate in a wide range of academic, administrative and personnel functions in accordance with WSU's self-governance principle.  The writing and distributing of the *Plan* was the result of Plaintiff's job responsibilities.  He initially distributed it internally as part of an ongoing faculty debate regarding the future of the journalism / communications studies department.  This is evidenced by an email written and sent by Plaintiff in which he solicited input from his fellow faculty members.  Specifically, he states:

> As you know, I'm preparing a proposal for splitting the School back into two separate units, a Communication Studies department and a professional/mass communication school.

Declaration of Erica Austin (ECF No. 66, Ex. 5).

Plaintiff only distributed the *7-Step Plan* outside the university community when the *Plan* was not adopted by his fellow faculty members.

Additionally, in his annual activity report for his 2007 annual review, he characterized his work on the *7-Step Plan* as faculty service.  Under the Service component of his review, Plaintiff listed the following under the heading of "Murrow School of Communication Service Activities:

> Developed a 7-Step Plan for reorganizing the Murrow School to improve the quality of the professional programs and attract more development funds.  The plan recommends that the communications studies program be separated from the four professional programs

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7**

1  (print journalism, broadcasting, public relations, and advertising), the
School hire more professionals and give them more authority, seek
2  accreditation for the professional programs, and development stronger
partnerships with the business community.
3  *Id.* (ECF No. 66, Ex. 10).

4      Likewise, *The Ivory Tower of Babel* was written while on sabbatical in

5  order to fulfil his scholarly publications requirements as a faculty member.  He

6  referred to this as a work in progress in 2006, 2007, and 2008 performance

7  reviews.[2]   Additionally, Dr. Austin discussed the book with Plaintiff during his

8  performance reviews.  The book does not represent speech made by a private

9  citizen; rather the book represents speech made in the course of Plaintiff's

10 employment as a college professor.

11     Furthermore, the alleged retaliatory conduct involved performance

12 evaluations and the decision to conduct an internal audit–discretionary functions

13 that a university is entitled to take without fear from judicial oversight in the day-

14 to-day workings of the university.  Absent arbitrary conduct or clear infringement

15 on an employee's First Amendment rights, Courts should not interfere with the

16 purely discretionary functions such as evaluating or investigating college

17 professors.

18     A reasonable jury could only come to one conclusion, that is, that Plaintiff's

19 alleged speech, including the writing and distributing of the *7-Step Plan* and the

20 _____

21     [2]In his Statement of Facts, Plaintiff states that "portions of *The Ivory Tower

22 of Babel* were critical of WSU administration, and cites to his Declaration. (ECF

23 No. 87, ¶ 251.  The actual work was not referenced in Plaintiff's Statement of

24 Facts.  It is Plaintiff's burden to establish that his speech was a matter of public

25 concern.  The Court is unable to make this determination without consulting the

26 source.  Consequently, the Court finds that Plaintiff has not met his burden of

27 showing that the speech contained in *The Ivory Tower of Babel* was speech on a

28 matter of public concern.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 8**

*Ivory Tower of Babel*, was inextricably related to the discharge of his faculty responsibilities and as such, is employee speech, not citizen speech.

Finally, the Court notes that this case is similar to the facts found in *Hong v. Grant*, 516 F.Supp.2d 1158 (C.D. Cal. 2007). In *Hong*, the plaintiff, a tenured professor at the University of California, Irvine, alleged that he was denied a merit-pay raise because he engaged in protected speech. The speech at issue were statements that (1) criticized another professor's mid-career review, (2) criticized the department's use of lecturers to staff certain courses; (3) criticized another professor during that professor's accelerated merit increase review; and (4) alleged that administrators circumvented the faculty's role in the hiring process. *Id.* at 1167-68. Judge Carney found that these statements were made pursuant to the plaintiff's official duties as a faculty member and therefore did not deserve First Amendment protection. *Id.* at 1168. The Ninth Circuit declined to proceed to the merits of the plaintiff's First Amendment claims, stating:

> It is far from clearly established today, much less in 2004 when the university officers voted on [the plaintiff's] merits increase, that university professors have a First Amendment right to comment on faculty administrative matters without retaliation.

*Id.* at *1.

The Circuit concluded that all individually-named defendants were entitled to qualified immunity. For the same reason, the individually-named Defendants are also entitled to qualified immunity.

### SUPPLEMENTAL JURISDICTION

Plaintiff's First Amendment claims are the only basis for federal subject matter jurisdiction. The Court declines to exercise its supplemental jurisdiction to hear Plaintiff's state law claims.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 61) is **GRANTED.**

2. The District Court Executive is directed to enter judgment in favor of

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9**

Defendants on Plaintiff's First Amendment claims.

       3.   Plaintiff's state law claims are **dismissed** without prejudice.

       4.   Plaintiff's Motion to Continue Trial Date (ECF No. 74) is **DENIED**, as moot.

       5.   Plaintiff's Motion to Strike Defendants' Expert Testimony (ECF No. 79) is **DENIED**, as moot.

       6.   Defendants' Motion to Strike and/or Limit Testimony of Gary Namie, Ph.D (ECF No. 107) is **DENIED**, as moot.

       7.   Defendants' Motion to Expedite (ECF No. 105) is **DENIED**, as moot.

       8.   Defendants' Motion to Strike (ECF No. 115) is **DENIED**, as moot.

       9.   Defendants' Motion to Expedite (ECF No. 113) is **DENIED**, as moot.

      10. Plaintiff's Motion for Return of Property (ECF No. 125) is **DENIED**, as moot.

      **IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

      **DATED** this 2nd day of June, 2011.


*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge


Q:\aCIVIL\2009\Demers\sj.wpd

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10**